UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JUDEA ROBINSON,

       Plaintiff,

v.

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

**Decision & Order
1:17-CV-00362-LJV-JJM**

On May 1, 2017, the plaintiff, Judea Robinson, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On October 27, 2017, Robinson moved for judgment on the pleadings, Docket Item 14, and on December 22, 2017, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 15.

For the reasons stated below, this Court grants Robinson's motion in part, denies the Commissioner's cross-motion, and remands this case for further administrative proceedings.

## **BACKGROUND**

### I.    PROCEDURAL HISTORY

On August 29, 2013, Robinson applied for Supplemental Security Income benefits ("SSI"). Docket Item 8 at 206. She claimed that she had been disabled since

May 30, 2013, due to depression, anxiety, trouble focusing, sleep issues, problems with social functioning, and pain and stiffness in her neck and back. *Id.* at 221.

On November 22, 2013, Robinson received notice that her application was denied because she was not disabled under the Act. *Id.* at 130. She requested a hearing before an administrative law judge ("ALJ"), *id.* at 142, which was held on January 26, 2016, *id.* at 176. The ALJ then issued a decision on June 20, 2016, confirming the finding that Robinson was not disabled. *Id.* at 18. Robinson appealed the ALJ's decision, but her appeal was denied, and the decision then became final. *Id.* at 5. On May 1, 2017, Robinson filed this action, asking this Court to review the ALJ's decision. Docket Item 1.

## II.    INSURED STATUS AND MOTOR VEHICLE ACCIDENT

Robinson's claim is complicated by the expiration of her insured status and injuries she sustained in an automobile accident after she was no longer insured. To be entitled to disability insurance benefits under the Act, a person must be insured for those benefits as defined by title 42 U.S.C. § 423(c)(1). *See* 42 U.S.C. § 423(a)(1). Robinson met the insured status requirement of the Act through March 31, 2015, but not after that date. Docket Item 8 at 21. She was involved in a motor vehicle accident on October 28, 2015, *id.* at 24, after her insured status had expired. Only those impairments that existed while Robinson was insured—that is, before her accident—are relevant to her claim for disability insurance benefits.

## III. RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Robinson's claim. Robinson was examined by a number of providers, but three—Abrar Siddiqui, M.D.; Ryan Ludwig, D.C.; and Zair Fishkin, M.D., Ph.D.—are of the most significance here. In addition, the conclusions of several treating physicians who opined on Robinson's worker's compensation disability also are relevant.

### A. Abrar Siddiqui, M.D.

Dr. Siddiqui, a specialist in internal medicine, examined Robinson on October 23, 2013, at the request of the Social Security Administration. He noted that Robinson reported neck and mid-back pain at a level of 6 to 7 out of 10 since she suffered an injury as a nurse's aide but that the pain was reduced to a level 3 by physical therapy, chiropractic therapy, massage, and pain medication. *Id.* at 325. He also noted that imaging studies showed bulges in the neck and thoracic spine. *Id.* Dr. Siddiqui opined that Robinson had no limitations on her ability to sit, stand, climb, push, pull, or carry heavy objects. *Id.* at 328.

### B. Ryan Ludwig, D.C.

Dr. Ludwig is a chiropractor who treated Robinson three times a week between her first visit on November 17, 2015, and the completion of a Physical Residual Functional Capacity Questionnaire on January 22, 2016. *Id.* at 522. Dr. Ludwig diagnosed Robinson with cervical disc displacement and cervicobrachial syndrome and opined that she was capable of low stress jobs but unable to tolerate physical exertion. *Id.* Dr. Ludwig found that Robinson would need a job that allowed her to shift at will among sitting, standing, and walking; would sometimes need to take unscheduled

breaks during an 8-hour work day; could never lift and carry 10 pounds; could only rarely lift and carry less than ten pounds; and could rarely hold her head in a static position, twist, stoop, or climb stairs.  *Id.* at 523-25.

### C.  Zair Fishkin, M.D., Ph.D.

Dr. Fishkin is a spinal specialist who saw Robinson in February 2016.  Dr. Fishkin noted that Robinson continued to experience neck and low-back pain, though she was able to walk with a steady gait and had no difficulty standing from a seated position.  *Id.* at 560.  Dr. Fishkin assessed Robinson with a herniated disc in the C5-6 vertebrae, acquired cervical kyphosis (a curve in the spine), and a fracture in the pars area of her L4 vertebra.  *Id.* at 561.  Dr. Fishkin opined that Robinson's motor vehicle accident aggravated her "pre-existing lumbar spinal conditions," but that the C5-6 disc herniation was new.  *Id.* at 562.

### D.    Worker's Compensation Opinions

Three treating physicians assessed Robinson's disability in connection with her New York State Workers Compensation claim.  On December 8, 2011, Joseph Falcone, M.D., found that Robinson suffered from a "[m]ild permanent disability."  *Id.* at 388.  Glen R. Smith, M.D., Ph.D., determined that Robinson had an "80%" temporary impairment during her visits on January 31, 2012, and on October 24, 2012.  *Id.* at 335, 371.  During Robinson's follow-up visits with Dr. Smith on November 28, 2012, December 19, 2012, March 26, 2013, April 23, 2013, and July 2, 2013, Dr. Smith consistently noted that Robinson had a temporary impairment of "50%."  *Id.* at 395, 402, 447, 451, 459.  On November 27, 2012, Cameron Huckell, M.D., opined that Robinson had an impairment of "37.5%."  *Id.* at 389.

4

## IV. THE ALJ'S DECISION

In denying Robinson's application, the ALJ evaluated Robinson's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any in the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If a claimant can perform past relevant work, the claimant is not

5

disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner has the burden of showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that a claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Here, at step one the ALJ determined that Robinson was not engaged in gainful employment. Docket Item 8 at 23. At step two, the ALJ found that Robinson suffered from a severe impairment of cervical and lumbar disc disorder but did not suffer from any severe mental impairments due to depression and anxiety. *Id.* at 23-24. At step three, the ALJ found that Robinson's severe impairment did not match or medically equal an impairment listed in the regulations. The ALJ then found that Robinson had the following physical RFC at step four:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except with normal breaks lift, carry, push and pull 10 pounds frequently and up to 50 pounds occasionally; stand and walk about 6 hours in an 8-hour day and sit for about 6 hours in an 8-hour day, not to exceed 2 hours at a time with 5 minute change; postural activities limited to occasionally, except avoid repetitive bending, stooping, twisting, crawling and climbing; manipulative limitations include avoid[ing] repetitive (constant) reading; no visual or communicative limitations; environmental limitations include avoid all exposure to heights and hazards.

*Id.* at 26. In reaching the RFC determination, the ALJ gave great weight to the opinion of Dr. Siddiqui based on the doctor's single examination in 2013 and his familiarity with

6

the Social Security disability program. *Id.* at 29. The ALJ gave only limited weight to Dr. Ludwig's opinion because it was "completed in one day, about 4 months after the motor vehicle accident and subsequent to the claimant's date last insured." *Id.* The ALJ did not discuss the weight given to Dr. Fishkin's opinion and gave "no weight" to the opinions of "various treating physicians" who examined Robinson in connection with her worker's compensation claim. *Id.* at 29-30. Finally, at step five, the ALJ found that Robinson could perform jobs that exist in the national economy, such as folding laundry, cleaning, or sorting. *Id.* at 31.

Robinson takes issue with the ALJ's RFC determination. She contends that the ALJ erred in assigning great weight to the stale opinion of Dr. Siddiqui, *see* Docket Item 14 at 12, whose examination was conducted almost three years before the ALJ's decision. Robinson argues that this stale opinion could not serve as substantial evidence, leaving the ALJ's decision improperly supported only by his lay opinion. Robinson also claims that the ALJ erred in assigning little weight to Dr. Ludwig's opinion because even though Dr. Ludwig is a chiropractor and therefore not an acceptable medical source under the regulations, his opinion was entitled to more weight because of his frequent contact and ongoing relationship with Robinson. *Id.* at 16. And Robinson argues that the ALJ erred in refusing to consider examinations that occurred after her car accident because even though the accident occurred *after* her coverage ended, the injuries sustained in the accident exacerbated conditions that existed *before* her coverage ended. *Id.* at 18-19.

7

## LEGAL STANDARDS

When evaluating a decision by the Commissioner, district courts have a narrow scope of review: they are to determine whether the Commissioner's conclusions are supported by substantial evidence in the record and whether the Commissioner applied the appropriate legal standards. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Indeed, a district court ***must*** accept the Commissioner's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). In other words, a district court does not review a disability determination de novo. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

## DISCUSSION

In determining a plaintiff's RFC, the ALJ must evaluate every relevant medical opinion. 20 C.F.R. § 416.927(c). But "only 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight. 'Acceptable medical sources' are further defined (by regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(a) and SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2009)).

The ALJ may consider the opinions of "other sources"—for example, nurse practitioners or chiropractors—but there is no obligation to assign weight or give deference to those sources. *Id.* Nevertheless, the ALJ "should explain the weight given

8

to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03P, at *6. When there is conflicting evidence in the claimant's record, "[t]he consistency of the opinion with the other evidence in the record is a proper factor for an ALJ to consider when weighing an opinion from an 'other source.'" *Id.* at *4 (citing 20 C.F.R. § 404.1527(d) and § 416.927(d)).

An ALJ also has a duty to "develop a complete medical record before making a disability determination." *Pratts v. Chater*, 94 F.3d 34 (2d Cir. 1996). An RFC assessment must be "based on all the relevant evidence in [the claimant's] case record." *See also* 20 C.F.R. 416.945(a)(1). Moreover, an ALJ should not rely on "stale" opinions—that is, opinions rendered before some significant development in the claimant's medical history. *See Jones v. Colvin*, 2015 WL 4628972, at *4 (W.D.N.Y. Aug. 3, 2015) (RFC not supported by substantial evidence when the "physicians did not have before them approximately four years of Plaintiff's medical records, including records related to Plaintiff's second heart attack."); *Acevdeo v. Astrue*, 2012 WL 4377323 (S.D.N.Y. Sep. 4, 2012) ("Additionally troubling is the weight the ALJ gave to the RFC assessment . . . rendered approximately 18 months before the hearing."), *report and recommendation adopted*, 2012 WL 4376296 (S.D.N.Y. Sep. 24, 2012); *Pierce v. Astrue*, 2010 WL 6184871, at *6 (N.D.N.Y. 2010) ("given . . . multiple indications that Plaintiff's condition may have worsened since August 2005, Dr. Scerpella's assessment did not provide an adequate basis for the ALJ's disability determination.").

9

Here, the ALJ strayed from these fundamental principles in several respects. First, he used the expiration of Robinson's insured status in March 2015 as a bright line and failed to adequately consider her medical history after that date. For example, while the ALJ paid lip service to the exam done by the treating spinal specialist, Dr. Fishkin, in February 2016, *see* Docket Item 8 at 28, he never addressed the weight given to Dr. Fishkin's opinions. That may well have been because Dr. Fishkin examined Robinson after her auto accident and diagnosed a new disc herniation due to the accident. *See* Docket Item 8 at 562. But Dr. Fishkin also noted that some of his diagnoses were related to pre-existing conditions that had been exacerbated by the accident. *Id.* Moreover, Dr. Fishkin specializes in spinal injuries, *see id.* at 558, and so his diagnosis and opinion were of particular importance here. The failure even to mention the weight given to his opinion was therefore error. *See Genier v. Astrue*, 298 Fed. Appx. 105, 108 (2d Cir. 2008) (remanding for reconsideration because "[a]n analysis of whether or not [a] diagnosis [that could directly contradict the ALJ's assessment] actually does alter the residual functional capacity . . . requires a factual inquiry. . .."); *Mecklenburg v. Astrue*, 2009 WL 4042939 (W.D.N.Y. Nov. 19, 2009) ("An ALJ . . . cannot 'ignore an entire line of evidence that is contrary to [his] findings.'") (quoting *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001)).

That inappropriate failure to consider examinations after Robinson's auto accident also led the ALJ to give Chiropractor Ludwig's opinion limited weight, "as it was apparently based on an examination completed in one day, about 4 months after the motor vehicle accident and subsequent to the claimant's date last insured." Docket Item 8 at 29. Again, giving controlling weight to a years-old exam while virtually ignoring a

10

more recent one largely because an auto accident intervened after the date last insured fails to consider the "complete medical record," *Pratts*, 94 F.3d at 34, and is not based on "all the relevant evidence."  20 C.F.R. 416.945(a)(1).

Of course, the effects of a car accident that post-dates expiration of the claimant's disability insurance are irrelevant.  *See Vincent v. Shalala*, 830 F.Supp. 126, 128 (N.D.N.Y. 1993).  Robinson must prove that her disability predated the expiration of her insurance.  *See id.*  But treatment for later aggravation of a disabling condition may well be relevant to a claim that a disability existed before insurance expired.  *See, e.g.*, *Hurdis v. Colvin*, 2014 WL 6982298, at *10 (Dec. 10, 2014) ("The ALJ's apparent failure to even consider pre-[disability onset date] evidence and post-[insured status date] evidence . . . would arguably mandate remand of this case on that ground alone . . .."); *Rasmussen v. Astrue*, 2011 WL 2090839, at *2 (D. Utah May 26, 2011) ("diagnosis today could be a sign of limited intelligence and mental illness in the past and should be considered"); *Hartfiel v. Apfel*, 192 F.Supp.2d 41, 44 (W.D.N.Y 2001) (considering treating physician's diagnoses of disability that post-dated insured status).

So while the injuries Robinson sustained solely as a result of her car accident were not relevant, her examinations and treatment after that accident were relevant insofar as they provided evidence of her condition while she was insured.  By failing to address or investigate this evidence, the ALJ failed to consider all relevant medical evidence.  Instead, the ALJ based the RFC almost exclusively on the opinion of Dr. Siddiqui, which resulted from a single examination years before the hearing.  That does not amount to substantial evidence.  On remand, the ALJ should consider all post-accident evidence that might relate to Robinson's pre-accident RFC.

11

Finally, the ALJ also erred in giving absolutely "no weight" to the opinions of other providers simply because they estimated a disability percentage based on the different standards employed by the New York State Workers Compensation Board. *See id.* at 29. This error is especially troublesome because those opinions were rendered before Robinson's insured status expired and before her auto accident and therefore include information particularly relevant to the ALJ's decision. While an "80% temporary impairment" or a "mild permanent partial disability," Docket Item 8 at 335, 338, may not translate perfectly into Social Security jargon, such assessments certainly must shed *some* light on the ALJ's determination—especially when those assessments were made by, in the ALJ's words, "various *treating* physicians." *Id.* (emphasis added). The failure even to consider these opinions without re-contacting these physicians to develop the record—such as by adapting their opinions to the Social Security context—also was error. *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) ("[A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record."); *Donato v. Secretary of Dep. Of Health and Human Services of U.S.*, 721 F.2d 414, 419 (2d Cir. 1983) ("the ALJ must not only develop the proof but carefully weigh it."); *Ligon v. Astrue*, 2012 WL 6005771, at *20 (E.D.N.Y. Dec. 3, 2012) ("A doctor's opinion is not intrinsically suspect because the patient is seeking other benefits.").

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 15, is DENIED, and Robinson's motion for judgment on the pleadings, Docket Item 14, is GRANTED IN PART and DENIED IN PART. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: September 17, 2018
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE